ARGUED ON MARCH 10, 2011; DECIDED ON JULY 15, 2011;
REHEARING AND REHEARING EN BANC DENIED ON SEPTEMBER 12,
2011; MANDATE ISSUED ON SEPTEMBER 21, 2011

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

| | |
|---|---|
| ELECTRONIC PRIVACY )<br>INFORMATION CENTER, *ET AL.*, )<br>)<br> Petitioners, )<br>)<br> v. )<br>)<br>JANET NAPOLITANO, in her official )<br>capacity as Secretary of the U.S. )<br>Department of Homeland Security, )<br>*ET AL.*, )<br>)<br> Respondents. )<br>)<br>_____) | No. 10-1157 |

**RESPONSE IN OPPOSITION TO PETITIONERS' MOTION FOR
ATTORNEYS' FEES UNDER THE EQUAL ACCESS TO JUSTICE ACT**

Respondents Janet Napolitano, *et al.*, hereby oppose petitioners' motion for attorneys' fees under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d) ("EAJA Mot.").

Petitioners Electronic Privacy Information Center ("EPIC"), *et al.*, are only entitled to fees under EAJA if the position of the government was not "substantially justified." *See id.* at § 2412(d)(1)(A). They cannot surmount this hurdle, and

therefore their fee request should be denied outright. Petitioners did not even prevail on most of their claims and motions for relief. Indeed, the Court determined that the government's position was legally correct with respect to all but one of the issues pressed by petitioners; and the government's overall position was eminently reasonable.

Even assuming *arguendo* that the position of the United States was not substantially justified, however, petitioners' fee request should be substantially reduced. First, petitioners cannot recover EAJA fees for the many claims that this Court rejected in its opinion; nor can they recover fees for their unsuccessful "emergency motion" for injunctive relief pending review, or for their recent unsuccessful motions to enforce the Court's mandate of September 21, 2011. Second, petitioners are not entitled to recover fees in excess of the EAJA maximum rate of $125 per hour, as adjusted for increases in the cost of living. Thus, if EAJA fees are awarded at all, petitioners are entitled to considerably less than they seek.

## STATEMENT

On July 2, 2010, petitioners filed a petition for review to challenge respondents' decision to use advanced imaging technology ("AIT") as a primary screening mechanism at airport checkpoints. *See EPIC v. Dep't of Homeland Security*, 653 F.3d 1, 4 (D.C. Cir. 2011). Simultaneously with the filing of their

petition for review, petitioners filed what they styled an "Emergency Motion" that sought to enjoin respondents from using AIT as a primary screening mechanism pending this Court's review. Respondents opposed that motion, and on September 1, 2010, the Court denied it.

On the merits of the petition for review, petitioners raised multiple claims, alleging that respondents' decision to use AIT as a primary screening mechanism violated the Fourth Amendment to the Constitution; the Privacy Act, 5 U.S.C. § 552a; the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb *et seq.*; the privacy protection provisions of the Homeland Security Act, 6 U.S.C. § 142(a)(1), (4); the Video Voyeurism Act, 18 U.S.C. § 1801; and the notice-and-comment rulemaking provisions of the Administrative Procedure Act ("APA"), 5 U.S.C. § 553. As noted in this Court's opinion, although "petitioners focus[ed] their opening brief upon their substantive challenges to the TSA's decision to use AIT for initial screening . . . our attention is most drawn to their procedural argument that the TSA should have engaged in notice-and-comment rulemaking." *EPIC*, 653 F.3d at 4. The Court rejected all of petitioners' substantive claims, but remanded the APA claim for "prompt" proceedings, while declining either to enjoin the use of AIT or to impose a rulemaking deadline, as petitioners had requested. *See id.* at 4-8, 11. Thus, although it did not adopt any of the justifications offered in respondents' brief for

proceeding without notice-and-comment rulemaking, the Court did not mandate vacatur of the existing AIT policy, as advocated by petitioners, accepting instead the government's position on the importance of maintaining the use of this technology while it engages rulemaking on remand. *See id.* at 8, 11.

Petitioners' subsequent petition for rehearing and rehearing en banc was denied. Moreover, since the Court issued its mandate on September 21, 2011, petitioners have filed two motions to enforce the mandate (which are included in their EAJA fee request). The Court denied the first motion to enforce on November 16, 2011; the second motion to enforce is currently pending.

## ARGUMENT

**I.    PETITIONERS' MOTION FOR FEES UNDER EAJA SHOULD BE DENIED, BECAUSE THE GOVERNMENT'S POSITION WAS SUBSTANTIALLY JUSTIFIED.**

The Equal Access to Justice Act authorizes a court in a civil action to "award to a prevailing party other than the United States fees and other expenses . . . incurred by that party," but only if the position of the United States was not "substantially justified" and no "special circumstances" would make an award unjust.[1]  28 U.S.C. § 2412(d)(1)(A). "Substantial justification" does not mean that the government's

---

[1] Respondents do not contest either petitioners' financial eligibility for an EAJA award  (*see* 28 U.S.C. § 2412(d)(2)(B)), or their "prevailing party" status for EAJA purposes (*see id.* at § 2412(d)(1)(A)).

- 4 -

position was correct, or even that it was "justified to a high degree"; instead, it simply means that the government's position was "justified in substance or in the main." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988); *see also Taucher v. Brown-Hruska*, 396 F.3d 1168, 1174 (D.C. Cir. 2005) ("a loss on the merits does not mean that legal arguments advanced in the context of our adversary system were unreasonable"); *accord, Holland v. Williams Mountain Coal Co.* 496 F.3d 670, 674, 677 (D.C. Cir. 2007) . Indeed, even "a finding in the merits phase that the Government's underlying action was 'arbitrary and capricious' within the meaning of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A), does not compel an award of fees." *FEC v. Rose*, 806 F.2d 1081, 1087 (D.C. Cir. 1986); *see also  F.J. Vollmer Co. v. Magaw*, 102 F.3d 591, 596 (D.C. Cir. 1996) ("because 'unreasonable' may have different meanings in different contexts, even the presence of that term or one of its synonyms in the merits decision does not necessarily suggest that the Government will have a difficult time establishing that its position was substantially justified"); *Halverson v. Slater*, 206 F.3d 1205, 1212 (D.C. Cir. 2000) (entitlement to EAJA fees does not "turn solely on the particular words a particular merits panel uses to describe the Government's position," but rather turns on the degree to which the agency's position was substantially justified).

Furthermore, while the question of whether the position of the United States was substantially justified "encompass[es] both the agency's prelitigation conduct and the Department of Justice's subsequent litigation positions," *Comm'r, INS v. Jean*, 496 U.S. 154 (1990), "[t]he single finding that the Government's position lacks substantial justification, like the determination that a claimant is a 'prevailing party,' . . . operates as a one-time threshold for fee eligibility." *Id*. at 160. "While the parties' postures on individual matters may be more or less justified, the EAJA – like other fee-shifting statutes – favors treating a case as an inclusive whole, rather than as atomized items." *Id.* at 161-62; *see also id.* at 159 (substantial justification inquiry involves "only one threshold determination for the entire civil action"); *see, e.g., Kuhns v. Board of Governors of Federal Reserve System*, 930 F.2d 39, 44 (D.C. Cir. 1991) ("[t]he 'position of the agency' is to be measured as a whole, not by reference to 'separate parts of the litigation'") (quoting *Jean*, 496 U.S. at 159); *but cf., e.g., Air Transport Ass'n of Canada v. FAA*, 156 F.3d 1329, 1332 (D.C. Cir. 1998) ("We cannot accept what the government styles as a 'holistic approach' to determining whether an agency's position is substantially justified under the Act so as to bar the recovery of attorney fees by a prevailing party.").[2]

---

[2] Although there is tension in this Court's case law (as *Kuhns* and *Air Transport Ass'n of Canada* demonstrate), the Court need not resolve it in the instant case
(continued...)

Here, although the government ultimately did not prevail on the petition for review (solely by virtue of the APA issue), its position was substantially justified at both the administrative and judicial levels. *See EPIC*, 653 F.3d at 4 (stating that on judicial review, petitioners "raise all the legal claims foreshadowed in their request for rulemaking, as well as a claim under the Video Voyeurism Act."). It bears emphasis that the government prevailed with respect to the lion's share of the case. The Court expressly rejected every one of petitioners' many claims other than their APA rulemaking claim. *See id.* at 3 ("we are not persuaded by any of the statutory or constitutional arguments against the rule"). It also rejected their requests for injunctive relief against the use of AIT, *vacatur* of the agency's decision to use AIT as a primary screening mechanism, and the imposition of a deadline on the rulemaking process on remand. Under these circumstances, the position of the agency, both in the administrative phase and in court, was substantially justified.

Like other decisions on novel issues as to which this Court has rejected the award of attorneys' fees under EAJA, respondents' position did not "suffer from the defects common to positions that are not substantially justified," because it was neither "flatly at odds with the controlling case law" nor "in the face of an unbroken

---

[2](...continued)
because, under either formulation – "holistic" or "non-holistic" – the government's position in this case was substantially justified.

line of authority." *Hill v. Gould*, 555 F.3d 1003, 1008 (D.C. Cir. 2009) (internal quotation marks omitted); *see also Taucher v. Brown-Hruska*, 396 F.3d at 1174 ("[I]f, for example, the government lost because it vainly pressed a position flatly at odds with the controlling case law, that is one thing; quite another if the government lost because an unsettled question was resolved unfavorably.") (internal citation and quotation marks omitted); *compare Halverson v. Slater*, 206 F.3d at 1211 (agency position contrary to plain meaning of statute was not substantially justified).

Indeed, the APA issue in this case – concerning rulemaking in the context of particular security devices and methodologies – was an issue of first impression in this Court and the courts of appeals generally and thus could not have been "flatly at odds with controlling case law." With regard to that issue, while the Court found respondents' APA analysis unpersuasive and ruled against them, it treated that analysis not scornfully but respectfully, and devoted several pages of its opinion to explaining why it disagreed with the government's arguments concerning the APA; it nowhere suggested that respondents' arguments were unreasonable.

For example, the Court explained that the distinction between a substantive and procedural rule is "'one of degree,'" and recognized that there may be different outcomes to that determination depending on the level of generality applied. *EPIC*, 653 F.3d at 5-6 (citation omitted). Similarly, with respect to the question of whether

TSA's policy constituted an interpretive rule, the Court observed that "there is some merit in the TSA's argument that it has done no more than resolve an ambiguity inherent in its statutory and regulatory authority . . . ." *Id.* at 7. Furthermore, the Court respected the important governmental interests at stake to such a degree that it expressly rejected petitioners' request to vacate TSA's rule during the rulemaking period. *Id.* at 8, 11. Such a decision certainly does not indicate that the government's position lacked substantial justification, and petitioners' EAJA application should therefore be denied.

## II.   ASSUMING *ARGUENDO* THAT THE GOVERNMENT'S POSITION WAS NOT SUBSTANTIALLY JUSTIFIED, PETITIONERS' FEE REQUEST SHOULD NONETHELESS BE SUBSTANTIALLY REDUCED TO REFLECT THE MANY ISSUES ON WHICH THE GOVERNMENT PREVAILED.

Although it mandates only a single, holistic substantial justification inquiry, *Jean, supra*, does provide for issue-by-issue evaluation in the determination of reasonable fees. EAJA requires that the attorney's fees awarded by the court be "reasonable," 28 U.S.C. § 2412(2)(A), and *Jean* holds that the proper understanding of "reasonable fees" is that of *Hensley v. Eckerhart*, 461 U.S. 424 (1983). *Jean*, 496 U.S. at 163 n.10. *Hensley* defines "reasonable attorney fees" as excluding fees relating to litigation issues upon which the plaintiff did not prevail: "In some cases a plaintiff may present in one lawsuit distinctly different claims for relief that are

based on different facts and legal theories. . . . The congressional intent to limit awards to prevailing parties requires that these unrelated claims be treated as though they have been raised in separate lawsuits, and therefore no fee may be awarded for services on the unsuccessful claim." *Id.* at 434-35; *accord, Anthony v. Sullivan*, 982 F.2d. 586, 589 (D.C. Cir. 1993) (holding that under *Jean* and *Hensley*, there is a "bright-line exclusion of fee reimbursement for unsuccessful aspects of a case").

Although *Hensley* permits the award of fees for unsuccessful "alternative legal grounds," *id.* at 435, that proviso is inapplicable here, where petitioners' unsuccessful claims and motions sought entirely different substantive relief – prohibition of the use of AIT as a primary screening mechanism, on grounds of unlawfulness under the Fourth Amendment and/or various federal statutes – that went far beyond their request for notice-and-comment rulemaking under the APA. In this regard, it is also noteworthy that both RFRA and the Privacy Act contain their own fee-shifting provisions for prevailing parties (found in 42 U.S.C. § 1988 and 5 U.S.C. § 552a(g)(4)(B), respectively); therefore EAJA, which only applies "[e]xcept as otherwise specifically provided by statute" (28 U.S.C. § 2412(d)(1)(A)), is inapplicable to such claims.

Thus, even if the Court concludes that respondents were not substantially justified in the instant case by virtue of petitioners' procedural claim, it should reduce

petitioners' fee request by a considerable amount, because the government prevailed on each of the substantive issues that were the "focus" of petitioners' merits briefs, *EPIC* 653 F.3d at 4 – the vast majority of the issues petitioners raised on the merits – as well as on petitioners' "emergency motion" for injunctive relief pending review (which the Court rejected at the outset of this litigation), and on their first motion to enforce the mandate (the second remains pending).[3]  Petitioners' counsel's time sheets indicate that they seek fees for all of these unsuccessful undertakings.

Specifically, it appears that petitioners' counsel spent a total of 42.2 hours on their unsuccessful first motion to enforce the mandate.[4]  Furthermore, Messrs. Rotenberg and Verdi spent a total at least 4 discrete hours exclusively on the unsuccessful emergency motion and the reply in support thereof, while Mr. Verdi and Ms. McCall spent a total of at least 0.4 hours exclusively on the unsuccessful RFRA claim.  None of this time is compensable.

Because petitioners' fee application does not break down the hours spent on each of the varied substantive issues raised by their petition for review (with the sole exception set forth above regarding the RFRA claim), a percentage reduction is

---

[3] The only unsuccessful submission petitioners appear to have omitted from their fee request is their petition for rehearing and rehearing en banc.

[4] They spent an additional 16.6 hours on their pending second motion to enforce the mandate.

- 11 -

warranted. *See, e.g., Fabi Const. Co. v. Sec'y of Labor*, 541 F3d 407, 413-14 (D.C. Cir. 2008) (applying percentage reduction where billing records did not adequately itemize hours spent on various issues). With respect to hours not broken down into precise components (*e.g.*, time designated "petition for review," "petition for review and emergency motion," "briefs," "review of government's brief," "moot court," and "oral argument"), a percentage reduction of at least 50% would be appropriate, to reflect petitioners' lack of success on any issue other than the APA issue. The proposed reduction would be consistent with the fact that more than 50% of the Argument section in the parties' briefs was devoted to issues other the APA issue.

### III. PETITIONERS ARE NOT ENTITLED TO FEES AT A RATE IN EXCESS OF EAJA'S CAP OF $125 PER HOUR, AS ADJUSTED BY INCREASES IN THE COST OF LIVING.

Under EAJA, a court may not award attorney's fees in excess of $125 per hour, "unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee."[5] 28 U.S.C. § 2412(d)(2)(A)(ii). Relying on the "special

---

[5] Before March 29, 1996, this fee cap was $75 per hour. On March 29, 1996, Congress made the new statutory maximum applicable to cases commenced on or after March 29, 1996. See Contract with America Advancement Act of 1996, Pub.L. 104-121, 110 Stat. 847, 863, §§ 232(b)(1), 233 (1996) (set out as a note under 5 U.S.C. § 504).

Respondents do not contest petitioners' cost-of-living adjustment to the $125
(continued...)

- 12 -

factor[s]" provision, petitioners contend that "EPIC is entitled to recover enhanced fees in this case based on the organization's distinctive knowledge of the complex technical, legal, and public policy issues associated with the agency's airport body scanner program." EAJA Mot. 12. Petitioners' claim is untenable. Case law from the Supreme Court and this Court establishes that the traits identified by petitioners do not constitute valid "special factor[s]" for EAJA purposes.

First of all, expertise in a particular practice specialty does not establish that there is a "limited availability of qualified attorneys" for the litigation involved. The plain language of the statute refers to the "limited availability of *qualified* attorneys for the proceedings involved" – not the limited availability of attorneys who are "expert" in the pertinent legal area or who "specialize" in the subject matter of the litigation. 28 U.S.C. § 2412(d)(2)(A)(ii) (emphasis added). Counsel generally do not need to specialize in order to "qualify" to be counsel for the particular proceeding involved.

As the Supreme Court explained in *Underwood*:

> [T]he exception for "limited availability of qualified attorneys for the proceedings involved" must refer to attorneys "qualified for the proceedings" in some specialized sense, rather than just in their general legal

---

[5](...continued)
per hour rate.

- 13 -

> competence. We think it refers to attorneys having some distinctive knowledge or specialized skill needful for the litigation in question — as opposed to an extraordinary level of the general lawyerly knowledge and ability useful in all litigation. Examples of the former would be an identifiable practice specialty such as patent law, or knowledge of foreign law or language.

487 U.S. at 572. Under *Underwood*, three questions must be answered before an enhancement based on the limited availability of counsel may be awarded. These questions are: 1) whether the professed specialization in a particular field of law reflects some distinctive knowledge or specialized skill generally unavailable in the profession at large; 2) if so, whether such specialization was "needful for the litigation in question"; and 3) assuming affirmative answers to the first two questions, whether such specialization could only be obtained at market rates in excess of $125 per hour. In the instant case, the answer to the first two questions plainly is no, so the Court need not even address the third.

It was precisely to preclude the possibility that the trend toward legal specialization would result in a broadening of the circumstances under which EAJA's fee cap would be exceeded that the Supreme Court in *Underwood* narrowly defined the exception for "limited availability of qualified attorneys" as referring to "an identifiable practice specialty such as patent law, or knowledge of foreign law or language." 487 U.S. at 572. As this Court has held in a long line of post-*Underwood*

- 14 -

cases culminating in *Truckers United for Safety v. Mead*, 329 F.3d 891 (D.C. Cir. 2003), each of these practice specialties requires skills or expertise above and beyond an attorney's knowledge of a particular area of the law. *See id.* at 895 ("stressing that nothing in EAJA or its legislative history indicates that the Congress intended to entitle 'all lawyers practicing administrative law in technical fields' to a fee enhancement, we [have] refused to recognize 'expertise acquired through practice' as a special factor warranting an enhanced fee") (citation omitted); *see also In re Sealed Case 00-5116*, 254 F.3d 233, 236 (D.C. Cir. 2001) ("we cannot award Appellants fees exceeding $125 simply because they wanted to hire attorneys who specialize in federal election law, have experience in federal litigation, and were familiar with the administrative record. Although federal election law 'involves a complex statutory and regulatory framework, the field is not beyond the grasp of a competent practicing attorney with access to a law library and the other accoutrements of modern legal practice'") (citation omitted); *F.J. Vollmer Co.*, 102 F.3d at 598 (rejecting notion that "specialization in firearms law" constituted a "special factor" warranting a fee enhancement, and holding that "lawyers practicing administrative law typically develop expertise in a particular regulated industry, whether energy, communications, railroads, or firearms. But they usually gain this expertise from experience, not from the specialized training justifying fee

- 15 -

enhancement. If expertise acquired through practice justified higher reimbursement rates, then all lawyers practicing administrative law in technical fields would be entitled to fee enhancements"); *Waterman S.S. Corp. v. Maritime Subsidy Bd.*, 901 F.2d 1119, 1124 (D.C. Cir. 1990) ("[w]e note that the two instances cited by *Pierce v. Underwood* . . . as 'identifiable practice specialt[ies]' justifying awards in excess of the cap, 'patent law, or knowledge of foreign law or language,' are both specialties requiring technical or other education *outside* the field of American law").

Assuming the claimed expertise qualifies as the kind of distinctive knowledge or specialized skill referred to in *Underwood*, of course, the applicant must establish a need for such expertise in the particular litigation and that such expertise could not be obtained at the statutory rate. In other words, even if a case arises in the context of a particular field of law, if there were no complex factual or legal issues unique to that field of law, then there can be no basis for an enhancement on the basis of "limited availability of qualified counsel." *See Truckers United for Safety v. Mead*, 329 F.3d at 896 ("whether 'specialized expertise in the safety aspects of the trucking industry' amounts to a 'special factor' [or not, such expertise] * * * was not 'needful for the litigation in question').

EPIC's conclusory assertion that "[n]o other organization or attorneys possessed the specialized skills necessary to pursue this particular litigation as did

EPIC" (EAJA Mot. 12) does not withstand scrutiny. Petitioners prevailed on an APA rulemaking claim that did not require the substantive expertise they claim regarding the AIT program. Petitioners cannot establish either that their professed area of specialization in a particular field of law – *i.e.*, EPIC's "distinctive knowledge of the complex technical legal, and public policy issues associated with the agency's airport body scanner program" (*ibid.*) – reflects some distinctive knowledge or specialized skill generally unavailable in the profession at large; nor can they show that such specialization was "needful for the litigation in question." Accordingly, their request for fees in excess of EAJA's statutory cap of $125 per hour, as adjusted for increases in the cost of living, should be denied. *See Select Milk Producers, Inc. v. Johanns*, 400 F3d 939, 950-51 (D.C. Cir. 2005) (reversing fee enhancement as inconsistent with test established by *Underwood*, *Truckers United*, and *F.J. Vollmer*).

Finally, petitioners' assertion that "[u]nder the EAJA 'special factors' provision, courts typically award enhanced attorney fees based on rates set forth in the Laffey Matrix or apply a ten percent enhancement to the statutory fee rate," is incorrect. *See* EAJA Mot. 12-13 (citing as examples *Cobell v. Norton*, 407 F. Supp.2d 140, 170 (D.D.C. 2005), *Role Models Am., Inc. v. Brownlee*, 353 F.3d 962, 970 (D.C. Cir. 2004), and *Action on Smoking & Health v. Civil Aeronautics Bd.*, 712 F.2d 211, 219-20 (D.C. Cir. 1984) (*ASH*)). As petitioners' own exhibit states, "[t]he

[*Laffey*] matrix does **not** apply in cases in which the hourly rate is limited by statute. *See* 28 U.S.C. § 2412(d)." EAJA Mot. Exh. 9 1 n.1 (bolding in original). Neither *Role Models* nor *ASH* – both § 2412(d) cases – applied the *Laffey* Matrix; *Cobell*, which did so, was not a § 2412(d) case, but rather a "bad faith" case under 28 U.S.C. § 2412(b), to which market rates (and hence the *Laffey* Matrix) applied. Nor did *Role Models* apply any enhancement to the statutory rate; while *ASH* applied a 10 percent enhancement, it did not do so based upon counsel's special subject matter expertise, and in any event its reasoning has been largely eclipsed by the Supreme Court's subsequent rulings in *Underwood*, *Perdue v. Kenny A.*, 130 S. Ct. 1662 (2010), *Blum v. Stenson*, 465 U.S. 886 (1984), and *Library of Congress v. Shaw*, 478 U.S. 310 (1986). Post-*Underwood*, "special factor" enhancements of any kind are very much the exception rather than the rule.

## CONCLUSION

For the foregoing reasons, EPIC's motion should be denied outright, because the government's position was substantially justified.  In the alternative, petitioners' fee request should be substantially reduced to reflect their lack of success on numerous claims, and their request for a fee enhancement should be denied.

Respectfully submitted,

/s/ Douglas Letter
DOUGLAS LETTER
 (202) 514-3602
 Douglas.Letter@usdoj.gov


/s/ John S. Koppel
JOHN S. KOPPEL
 (202) 514-2495
 John.Koppel@usdoj.gov
 Attorneys, Appellate Staff
 Civil Division, Rm. 7264
 United States Department of Justice
 950 Pennsylvania Avenue, N.W.
 Washington, D.C.  20530

# CERTIFICATE OF SERVICE

I hereby certify that on the 26th day of January, 2012, I caused the foregoing Response in Opposition to Petitioners' Motion for Attorneys' Fees Under the Equal Access to Justice Act to be filed electronically with the Court via the Court's CM/ECF system, and also caused four copies to be delivered to the Clerk of the Court by hand delivery within two business days of filing. On the same filing date, service will also be made automatically upon the following CM/ECF participants:

>Marc Rotenberg, Esquire (CM/ECF participant)
>John Verdi, Esquire (CM/ECF participant)
>ELECTRONIC PRIVACY INFORMATION CENTER
>1718 Connecticut Avenue, NW
>Suite 200
>Washington , DC 20009

>/s/ John S. Koppel
>JOHN S. KOPPEL
> Attorney